Cass *v.* Anderson.

### DAVID CASS *v.* DAVID ANDERSON.

*Slander.　Pleading.　Practice.　Evidence.*

When the statement of material facts, in the colloquium of a declaration for slander, is defective in form, the defect cannot be taken advantage of by motion in arrest of judgment. After verdict the court will supply by intendment all such averments as may fairly and reasonably be presumed to have been proved, and which the general, though defective allegations of the declaration embrace.

Therefore, where the action was for words imputing perjury to the plaintiff in his testimony as a witness on a certain trial, and the slanderous words were connected with that trial, and the trial described, only by way of argument and recital instead of direct averment ; *Held,* that after verdict this defect could not be objected to.

And although the declaration contained no direct averment that the plaintiff was legally sworn as a witness on the trial in which he was said to have given the false testimony, and the only allegation on this point was that the slanderous words were "uttered concerning the plaintiff and his testimony given as a witness on that trial ;" *Held,* that after verdict this allegation, though defective, was sufficient, and the court would construe it that the testimony of the witness was given in the usual manner under oath.

Also, if the declaration did not directly aver that the defendant charged the plaintiff with having committed perjury, it was held sufficient, when the words spoken explained by the colloquium were actionable, if the innuendo showed that the words were uttered in an injurious sense.

It is immaterial too whether the slanderous words, in such a case, are a direct averment that the plaintiff swore falsely, or what their form is, if as spoken they would generally be understood, in their ordinary and natural import, to convey the slanderous *idea* or meaning.

It appeared from the evidence on the part of the plaintiff that he testified as a witness on the trial in which the false testimony was said to have been given by him, but there was no evidence that he was there *sworn* as a witness except

as it was to be inferred from his having testified ; *Held,* that the fact that he testified tended to prove that he was sworn, and that in the absence of evidence to the contrary no further proof of his having been sworn was necessary.

*Quere,* whether words imputing perjury to a party in his testimony as a witness on a trial where he testified without being sworn, would be actionable as slander, the words, as spoken, not informing those hearing them that the party was not under oath when he gave the evidence in question.

*It seems,* that words spoken by the defendant of the plaintiff as follows, " he (the plaintiff) acknowledged that he swore to a lie about the money, and had taken seventy-five dollars out of F., more than he ought to ; he acknowledged to me (the defendant) that he swore falsely in the trial with F., and that he swore falsely in reference to the money, and that he never let F. have any money as he swore he did, and that he must go to State prison," construed altogether are actionable in themselves as slander without a colloquium to show that they were uttered with reference to a judicial proceeding.

CASE for slander.   The first count of the declaration set forth that the defendant on the 3d day of March, 1857, at Glover, in the county of Orleans, maliciously spoke the following false and defamatory words of and concerning the plaintiff and " his testimony given as a witness at Glover, before Amos P. Bean, Hezekiah S. Bickford and Samuel S. Blanchard, arbitrators who had before that time arbitrated and awarded between the plaintiff, David Cass and one Francis R. Flood;" that is to say, :   " I, (meaning the defendant) was passing by Cass', (meaning the plaintiff's) house, town meeting day, and he, Cass, came out and inquired if they, (meaning Francis R. Flood and his friends,) were a going to take him up for false swearing, (meaning perjury,) that day.   I replied, I did not know as they would that day, but it would not be above a week before they would, (meaning that the plaintiff would be arrested for the crime of perjury within one week.)

Cass acknowledged that he swore to a lie about the money, and had taken seventy-five dollars out of Flood more than he ought to, (meaning that the plaintiff had testified falsely in the trial of his, the plaintiff's, cause with Francis R. Flood before the arbitrators aforesaid, and perjured himself, and had thereby obtained an award for seventy-five dollars more than was just.) I told Cass that I guessed that he swore rather too strong about the apple trees, as much as three hundred too strong.   He said he guessed he did about that, (meaning that the plaintiff con-

Cass *v.* Anderson.

fessed to the defendant that he had knowingly sworn and testified in the trial aforesaid to three hundred apple trees more than he owned, and thereby had committed perjury.)  He (meaning the plaintiff,) acknowledged that he swore to a lie about the borrowed money, and that he never let him (meaning the said Francis R. Flood) have any money at all.

Cass acknowledged to me that he swore false in the trial with Flood, (meaning the arbitration aforesaid,) and that he had sworn falsely in reference to the money, and that he never let Flood have any money as he (meaning the plaintiff,) swore he did, and that he (meaning the plaintiff,) must go to State prison, (meaning that the plaintiff had confessed to the defendant that he, the plaintiff, had sworn falsely and committed perjury on the trial of his said cause with Flood, for which crime he, the plaintiff, must go to State prison.")

The other counts were substantially the same so far as is material to the decision of the court.  The defendant pleaded the general issue and seven pleas in justification.  All that is material of the pleas is stated in the opinion.  The case was tried by jury at the December Term, 1859,—POLAND, J., presiding.

The plaintiff proved that there was an arbitration between himself and Francis R. Flood of certain matters in difference, before the arbitrators named in the declaration ; that upon that trial the plaintiff testified as a witness, and that the defendant afterwards, speaking of the plaintiff and of his testimony given before the arbitrators, spoke the words set out in the declaration.

The plaintiff gave no evidence that he was sworn as a witness on the trial before the arbitrators, except as the same is to be inferred from his having testified as a witness before them.

The defendant requested the court to charge the jury that the plaintiff could not recover without proving that he was duly sworn as a witness upon the trial before the arbitrators.  But the court charged that no further proof of his having been sworn was necessary.  To this charge the defendant excepted.  The jury returned a verdict for the plaintiff.

The defendant then moved in arrest of judgment for insufficiency of the plaintiff's declaration.  The court overruled the motion, and the defendant excepted.

Cass *v.* Anderson.

*T. P. Redfield*, for the defendant.

*B. H. Steele* and *Cooper & Bartlett*, for the plaintiff.

ALDIS, J.   An important question arises in this case as to the meaning of the bill of exceptions.   The bill states that the plaintiff proved that the plaintiff testified as a witness on the trial before the arbitrators, but gave no evidence that he was sworn as a witness *except* as the same is to be inferred from his having so testified.   The defendant requested the court to charge the jury that the plaintiff could not recover without proving that he was duly sworn as a witness upon the trial.   But the court charged that no *further* proof of his having been sworn was necessary.   To this the defendant excepted.

The defendant construes this to mean that the court charged the jury that the plaintiff could recover without proving that he was sworn as a witness; that if he testified, though not sworn, it was sufficient.

The plaintiff claims that the meaning is, that the fact that he testified tends to prove that he was sworn, and that as the jury might find that fact from the evidence so tending to prove it, and as there was no evidence to the contrary, they were bound to find that fact as proved which the uncontradicted evidence tended to prove, and therefore no more direct proof of his having been sworn in due and legal form was necessary.

As persons who testify as witnesses are usually sworn, proof that a person testified as a witness tends to show that he was sworn.   If there is no evidence tending to show that the witness was not sworn, we think the jury would be bound to conclude from the fact that he testified, that he was sworn.   Such is the natural and legal inference, and jurors are not at liberty to disregard the necessary result of undisputed facts.

When the bill of exceptions says that the plaintiff gave no evidence that he was sworn except what may be inferred from the fact that he testified, it virtually says that that fact did tend to prove that he was sworn.   Now it is to be observed that the bill is silent as to the defendant's offering any testimony to the contrary.   The question does not arise upon any exclusion of

testimony so offered by the defendant. Nor does it appear that there was anything in the case tending to show he was not sworn. But the question arises upon a request to charge upon the case bare of all evidence on this point except that offered by the plaintiff. What is the fair meaning of the request ? The words are, " the defendant requested the court to charge the jury that the plaintiff could not recover without proving that he was *duly sworn* as a witness." Unexplained by the context, these words might only mean that the plaintiff, to recover, must prove that he was sworn. And then, upon the defendant's construction, the natural reply of the court would have been, " No, it was not necessary for him to have been sworn ; it is enough that he testified." But when the context states that the fact that the plaintiff testified, tended to show that he was sworn, and that the court charged that no *further* proof was necessary to show he was duly sworn, we think the court must have understood the request to mean that the fact that he testified only tended by *inference* to prove that he was sworn, and there ought to be *direct* proof that he was *duly* sworn. So understanding the request, the reply of the court, that no *further* proof was necessary, was a direct denial of it, and the expression *no further* proof implies that the defendant claimed further proof as necessary, but that such proof as was in was sufficient, and no more direct proof was necessary.

This view of the bill of exceptions renders it unnecessary to consider the question, whether words imputing perjury to a party in his testimony upon a trial, in which he might have been sworn, will sustain the action, when it appears by the proof that the party testified without being sworn. As the essence of slander consists in making it to be believed that the party has perjured himself, and as the slanderous words do not carry with them their antidote, so that those who hear them may know that he did not commit perjury, but only testified falsely when not under oath, we should be strongly inclined to sustain the action, even upon the view presented by the defendant. But not having the means of fully examining the authorities upon this question, and as they do not seem to be entirely in harmony, we do not decide the point.

Cass *v.* Anderson.

II. The defendant moves to have the judgment arrested because the declaration does not allege that there was a court or judicial proceeding before whom the false testimony was given.

The colloquium of the declaration alleges the slander to have been uttered of the plaintiff's testimony given as a witness at Glover before certain arbitrators who are named, and who had held an arbitration between the plaintiff and one F. R. Flood.

The slanderous words set forth contain the following expressions : " Cass acknowledged that he swore to a lie about the money, and had taken seventy-five dollars out of Flood more than he ought to. He acknowledged that he swore to a lie about the borrowed money, and that he never let him (Flood) have any money at all. Cass acknowledged to me that he swore false in the trial with Flood, and that he had swore falsely in reference to the money, and that he never let Flood have any money as he swore he did, and that he must go to State's prison."

Now, conceding (which is at least doubtful,) that these words are not in themselves actionable, and require a colloquium to show that they were used in reference to a judicial proceeding, it is plain that a colloquium which sufficiently describes an arbitration between Flood and the plaintiff, as the one referred to, would be enough. This the declaration attempts to do, and although the averments are both argumentative and by way of recital, and so are defective in form, yet after verdict such defects cannot be taken advantage of. The court are required to supply by intendment all such averments as may be fairly and reasonably presumed to have been proved, and which the general, though defective, allegations of the declaration embrace. There can be no question but that the proof of an arbitration between the plaintiff and Flood must, under the declaration, have been fully made out. The colloquium contains terms sufficient to include such necessary averment by reasonable intendment.

2. It is also urged that there is no averment that the plaintiff was legally sworn. The declaration avers that the words were uttered " concerning the plaintiff and concerning the plaintiff's testimony given as a witness before the arbitrators," etc. This is not a direct averment that the plaintiff was sworn ; it is clearly quite defective in form, at most but an argumentative averment ;

Cass *v*. Anderson.

but after verdict we must hold it sufficient.   We must understand that his testimony was given in the usual manner and under the solemnities of an oath.

The case of *Sanderson* v. *Hubbard*, 14 Vt. 462, has been cited to show that the omission of the averment that the plaintiff was legally sworn, was fatal on motion in arrest.   But the case by no means sustains that doctrine, nor does it go so far as to say that the words used in that declaration, " was examined on oath and gave evidence," are fatally defective on demurrer, but only that the defect, if any, was caused by the plea, and to use the words of ROYCE, J., that that allegation should be understood to mean that he was examined in a legal manner and under the usual responsibilities of a witness, and having been first duly sworn by a magistrate.

The authorities, however, seem to go further than is required to sustain this judgment.   It is stated in 1 Amer. Lead. Cases, 3d ed. 122, citing a large number of authorities, that there is no question that the want of an averment that the plaintiffs were legally sworn cannot be objected to after verdict.   Here, however, the averment is not wholly omitted, but only defectively stated.   It does not seem to be a forced intendment to say that testimony given by a witness was given upon oath, that the witness was sworn.   This objection, therefore, we overrule.

3. It is also objected that the declaration does not aver that the defendant charged the plaintiff with having committed perjury.   But the words explained by the colloquium are clearly actionable, and in such case it is sufficient if the innuendo show that they were uttered in an injurious sense.   The colloquium alleges that the words were spoken to expose him to the penalties of perjury, and the innuendo expressly states that the plaintiff thereby acknowledged that he had committed perjury, etc.   In this connection, too, we may observe that the plea in substance admits that the defendant charged the plaintiff with perjury, which admission precludes him from this objection.

4. It is urged that the words spoken are not a direct averment that the plaintiff swore false, but only that he acknowledged that he swore false, and that this cannot be slander.

The form in which a slander is expressed is quite immaterial.

Cass *v.* Anderson.

The words may be ironical, or in the form of a question, or narrative of what some one has said, and yet be actionable as much as if expressed in the most positive and direct form of averment. The substantial inquiry is, did the party mean to have the slanderous *idea* believed by those who heard him? Would the words as used be generally understood in their ordinary and natural import to convey the injurious meaning?

In this case the colloquium and innuendoes, connected with the words alleged to have been spoken, leave no room for question that an ample cause of action is declared upon, and upon this ground no demurrer could prevail.

We have, in this decision, treated the words as if not actionable in themselves, but we strongly incline to the opinion that the words construed altogether, and especially in connection with the expression that he confessed that he must go to State's prison, are actionable. The words set forth seem to carry the direct charge of perjury much more strongly than many which may be found in the books, which have been held actionable. See 1 Am. Lead. Cases, 119, and cases there cited, especially *Gilman v. Newell*, 8 Wend. 573.

Judgment affirmed.