D. P. ZELIFF v. SUE M. JENNINGS.

(Case No. 4973.)

1. SLANDER — LIMITATION.— Limitation will not run against an action for slander, brought within a year after the uttering of the slanderous words, merely because an amendment filed more than one year afterwards, which did not change the charge contained in the original petition, set forth more specifically, by way of averment, the innuendo thereof.

2. SLANDER — EVIDENCE.— In a suit for slander the defendant was charged with having said, "She (meaning plaintiff, Sue Jennings) was kept all last year by the son of a widow;" and after stating in the petition that Bettie Lyons was a lewd girl, the petition charged that defendant had said, "We have got another woman in the same house (meaning plaintiff), just like that girl" (meaning Bettie Lyons). A witness on the trial was permitted to state that he heard defendant say, "Sue Jennings was kept last year by the son of a widow woman," and also, "We have another girl on the place just like the one we had last year," it being shown that plaintiff was the only young woman living there. Held, that the evidence was admissible.

3. EVIDENCE.— In an action for slander, evidence of the repetition by defendant of the slanderous words, after the institution of the suit, is admissible to show the malice of the speaker in using the words constituting the basis for the action.

4. PLEADING — SLANDER.— When the charge in an action of slander sets forth a conversation with defendant. showing that in defendant's estimation L. was a lewd girl, and the petition shows that plaintiff was the only woman who lived in the house when the following words were spoken by defendant, " we have got another woman in that same house, just like L.," held,

that the plaintiff, in charging the innuendo, was not bound to specify whether the man with whom defendant intended to charge lewd intercourse was married or single, and that a charge that the defendant meant to be understood that plaintiff was guilty of "adultery or fornication" was sufficient.

5. SAME.— In actions of slander it is not necessary that the language used should charge the commission of a crime with such technical accuracy as would be required in an indictment; words calculated to induce those who heard them to believe that the person of whom they are spoken is guilty of a crime are sufficient to support the action.

6. SLANDER.— An accusation is actionable whenever it charges an offense which, if proved, would subject the accused person to a punishment, though it may not be such as is known in the books, technically, as an ignominious punishment, provided it be such as to bring disgrace on the person of whom the words are spoken.

7. SLANDER.— See statement of case for words spoken, charged to have been slanderous, which were actionable *per se;* and see opinion for a charge asked, and properly refused, because it was calculated to impress the jury with the idea that it was within their province to determine whether such words were actionable *per se.*

8. MEASURE OF DAMAGES.— Wounded feelings, enfeebled health and incapacity to perform labor, as a result of slanderous words charging a young lady with being unchaste, may be taken into consideration by a jury in estimating damages for the slander.

9. EVIDENCE — SLANDER.— When defamatory language other than that made the basis of an action is admitted in evidence, it is error not to instruct the jury that it can only be considered for the purpose of showing malice in the speaker, and a wanton and deliberate purpose to injure, in order to recover exemplary damages for speaking the words on which the action was grounded.

10. SLANDER — LIABILITY OF THE HUSBAND FOR SLANDEROUS WORDS SPOKEN BY THE WIFE.— The husband is liable in damages equally with the wife for slanderous words spoken by her, and a general judgment may be rendered against both, but requiring that her separate estate be first exhausted before sale of the husband's to satisfy the judgment.

11. CASES DISCUSSED.— McQueen *v.* Fulgham, 27 Tex., 463; Austin *v.* Wilson, 4 Cush., 274, and Martin *v.* Robson, 65 Ill., 130, reviewed and discussed.

12. PLEADING.— Claims for compensatory and for exemplary damages should be severed in the pleading, and in their submission to the jury.

APPEAL from Collin. Tried below before R. De Armond, Esq., special judge.

Suit for slander, brought by appellee May 31, 1880. First and second amended original petitions filed January 16, 1882, and June 25, 1883, charging appellant, Deliza Zeliff, wife of D. P. Zeliff, on the —— day of May, 1880, and at divers times previous thereto, with uttering, publishing and circulating certain words charging her with unchastity; and in the second amended petition, charging her with intending to convey the impression, by the words originally set forth, that appellee had been guilty of the crimes of adultery and

fornication, and alleged as special damages dejection of mind, enfeebled body, inability to labor, expense of suit, loss of companionship of friends, rejection by society, damage to name, fame and credit. Aggregate damages claimed, $11,000. Appellants answered by general demurrer, general denial, plea of not guilty and statute of limitations. Verdict and judgment, June 20, 1883, in favor of plaintiff for $2,600.

The second assignment of error was: The court erred in overruling defendant's special exceptions to said (second) amended petition, because the same sets up an entirely new cause of action from that alleged in the original petition filed herein on May 31, 1880, and amendment, January 16, 1882, and the cause of action is barred by the statute of limitations.

The allegations in the original petition, filed May 31, 1880, were as follows: First count: "That on or about the —— day of May, 1880, defendant, Deliza Zeliff, maliciously contriving to injure and defame the plaintiff in her good name and reputation, did, in the presence of divers good people of this state, publicly speak, utter, repeat and circulate the following false, malicious and scandalous words of and concerning the plaintiff, to wit: She (meaning plaintiff) was kept (meaning kept as a mistress or lewd woman) all last year by the son of a widow woman who lived near Jennings' (meaning Jennings, plaintiff's father)." Second count: "That on or about the —— day of May, 1880, defendant, Deliza Zeliff, maliciously contriving to injure plaintiff in her good name and reputation, did, in the presence of divers good people of this state, publicly speak, utter, repeat and circulate the following false, malicious, base and scandalous words, to wit: The woman (meaning a woman named Bettie Lyons, of notoriously unchaste and lewd character) who lived last year in the house where Jennings lives (meaning the house where plaintiff then resided, and now resides with her father, Jennings), on the night the crib was burned (meaning a crib belonging to defendant, D. P. Zeliff), went back with the boys, one at a time, to the brush, and we have now another in the same house just like her (meaning the plaintiff), and that she was of like lewd and unchaste character with said Bettie Lyons."

June 25, 1883, the plaintiff filed a second amended petition charging that plaintiff is a virgin and unmarried. "That on or about the —— day of May, 1880, and divers times previous thereto, defendant, Deliza Zeliff, contriving to injure," etc. (continues the same as the original down to the first count, except the allegations that the words were spoken in the presence of Wm. Ray), to

wit: "You boys have been in the habit of going over to Bettie
Lyons' to get a little " (meaning thereby to have carnal intercourse
with the said Bettie Lyons). And further: "Did not Charles Davis
keep you fellows horned off and got it all to himself?" (meaning to
ask thereby if the said Davis had not endeavored to keep the said
Bettie Lyons for his own exclusive use as a lewd woman); and fur-
ther: "Did you see her (meaning the said Bettie Lyons) go off with
Rube Baker on the night the crib was burned (meaning corn crib
belonging to defendant), to the brush?" (meaning the said Bettie
Lyons accompanied the said Rube Baker to the brush on the night
the said crib was burned for lewd purposes); and further: "We
have got another woman in the same house just like that girl"
(meaning the aforesaid Bettie Lyons), and meaning thereby that
plaintiff was a lewd woman and would prostitute her person with
men, and that she had been guilty of adultery and fornication; and
added, "You might go over, and you might get something from old
man Jennings' girl" (meaning that the said William Ray should go
to the house where plaintiff lived and might have carnal intercourse
with her); and further, "I am afraid of her" (meaning plaintiff).
"She (meaning plaintiff) is a base woman." And further, "she (mean-
ing plaintiff) was kept all last year by the son of a widow." And
continued as in first count in original petition down to the following
allegation, to wit: "And was guilty in conjunction with said man
of the crime of adultery and fornication."

The testimony of the witnesses disclosed the use of language by
appellant, subsequent to that charged, of the same import — imput-
ing a want of chastity,— an action upon which was at the time of
trial barred by limitation.

The first charge refused was as follows: "Words charging a
woman with unchastity, as alleged in plaintiff's petition, are not
of themselves actionable; and in order that plaintiff recover against
defendants, the testimony introduced must be sufficient to satisfy
your minds that the words therein charged were uttered, spoken
and published by the defendant, Deliza Zeliff, as alleged, or some
one or more of them constituting in themselves a slander, and that
said words so uttered, spoken and published, were so uttered, spoken
and published of and concerning the plaintiff in this suit, and with
the intent to injure her character, and were so understood at the
time by those to whom the same were spoken, and in consequence
of the uttering, speaking and publishing thereof plaintiff has sus-
tained loss and been damaged." The fourth charge refused was as fol-
lows: "If you should believe from the evidence that the defamatory

words charged to have been uttered and published of and concerning plaintiff's character were so uttered and published with ·the intent to injure plaintiff, but that plaintiff has not sustained any loss or damage in consequence thereof, then you will find for defendants."

The second charge asked and refused was as follows: "The damages sustained by plaintiff must be the immediate and proximate result of the defamatory words charged to have been uttered, spoken and published and proven upon the trial." Third charge: "Plaintiff cannot recover damages on account of her wounded feelings nor enfeebled health, and incapacity to perform labor, but the loss sustained by her must be to her reputation and sustained through the conduct of others."

The following was one of the charges excepted to: "The plaintiff can only recover for the language charged in her petition as having been spoken concerning her; but you may take into consideration other slanderous statements made by defendant Deliza Zeliff, if any, as evidence of malice and in aggravation of, and for the purpose of increasing, the amount of damages. If the language charged to have been spoken, or any part of it, constitutes a charge of the offense of either adultery or fornication against the plaintiff according to the definition of those offenses as above set out, then the law presumes that the words were spoken maliciously."

The character of the other charges refused or excepted to will be understood from the opinion.

The jury first returned into open court the following verdict: "We, the jury, find for the plaintiff actual damages, $2,500; also pecuniary damages, $100; (signed) J. Woodall, foreman;" and were asked by the court if they agreed to this verdict, to which they replied they did; and thereupon one of plaintiff's counsel suggested in the hearing of the jury that only $1,000 was claimed in the petition as actual damages, and that the verdict of the jury was a mistake, and possibly the result of a misconception of the charge on punitory damages. Thereupon the court explained the difference between punitory and actual damages; and in answer to questions by the court, the foreman said that the $2,500 was actual damages, and the $100 for loss of health and inability to labor. The court then instructed that if they desired they could return and reform their verdict, which they did, and brought into open court the following verdict:

"We, the jury, find for the plaintiff, and assess the damages, actual and vindictive, at $2,600 (twenty-six hundred dollars).

      (Signed)                  "J. WOODALL, Foreman."

They were then, after reading the verdict by the clerk, asked by the court if ·they agreed to this verdict, and answered they did, and were discharged by the court, but remained in the court room, and again recalled at the request of plaintiff's counsel, the judge telling them that the order discharging them was revoked, and their verdict was again reformed so as to read as follows:

"We, the jury, find for the plaintiff, and assess the damages at $100 actual damages; also vindictive or punitory damages at $2,500.
(Signed)        " J. WOODALL, Foreman."

*Throckmorton & Brown*, for appellants, on limitation cited: R. C., art. 3202, sec. 2; Townshend on Slander, secs. 325, 364, 365 and 369; 12 Am. Dec., 244.

On alleged error in admitting evidence of words spoken after suit brought, they cited: Townshend on Slander (2d ed.), p. 601, notes 4, 5 and 6; sec. 392, note 3; sec. 395, note 4; Sutherland on Damages, vol. 3, pp. 649 and 650, notes 1 and 4; Sedgw. on Meas. Damages (6th ed.), pp. 115 and 116, bottom and top of page; Abbott's Trial Ev., p. 666.

On the suit being for words not *per se* actionable, they cited: Townshend on Slander, secs. 146, 147, 197, note 5; sec. 198, note 5, and sec. 59, note 2; Sedgwick on Damages, p. 675, note 3; McQueen *v.* Fulgham, 27 Tex., 463; Linney *v.* Maton, 13 Tex., 449; Ross *v.* Fitch, 58 Tex., 151.

On the office of the innuendo they cited: Watson *v.* Hampton, 2 Bibb (Ky.), 319; Elliott *v.* Allsberry, 2 Bibb (Ky.), 473; Martin *v.* Melton, 4 Bibb (Ky.), 99; Sheely *v.* Biggs, 3 Am. Dec., 552; Hopkins *v.* Beedle, 2 Am. Dec., 191.

On vindictive damages they cited: Glasscock *v.* Shell, 57 Tex., 222; 46 Tex., 37; 51 Tex., 189; Townshend on Slander, secs. 146, 148 and 197, note 5; sec. 198, note 5, and p. 107, note 2; Sedgwick on Meas. Damages, p. 675, note 3.

*Klementson & Church* and *J. R. Craig*, for appellee, cited, on sufficiency of the charge of slander: Smith *v.* McGaughey, 13 Tex., 467; Scoby *v.* Sweatt, 28 Tex., 729; The Governor *v.* Burnett, 27 Tex., 37; Becton *v.* Alexander, 27 Tex., 667; Turner *v.* Brown, 7 Tex., 490; Bates *v.* Harrington, 51 Vt., 1.

On the correction of the verdict: I. & G. N. R. R. Co. *v.* Stewart, 57 Tex., 169–70.

STAYTON, ASSOCIATE JUSTICE.— The defamatory language made the basis of this action was substantially the same as set forth in the

original petition, filed very soon after the language was alleged to have been uttered, as was it in the amended petition on which the cause was tried. Such statements in the amended petition as differed from those contained in the original petition were not part of the language made the basis of the action, but such only as related to the averment, colloquium or innuendo. These matters in no manner changed the cause of action, and the court did not err in overruling the exceptions which set up the bar of the statute of limitations. Scoby *v.* Sweatt, 28 Tex., 729; Becton *v.* Alexander, 27 Tex., 667.

The testimony of the witness Meads was not variant from the allegations of the petition; the language which he testified was uttered by Mrs. Zeliff in his presence was substantially that which it was alleged in the petition she had uttered. This, even in cases of this character, is all that the law requires. Townshend on Slander, 364, 365; Miller *v.* Miller, 8 Johns., 75.

That he did not testify to all that was alleged in the petition was no reason for excluding his evidence. His evidence, in addition to showing that the defamatory language was used by Mrs. Zeliff as charged in the petition, gave her declarations in reference to Bettie Lyons, "just like" whom in character the appellee was said to be. The evidence in this latter respect was only such as gave the statements of Mrs. Zeliff, showing that Bettie Lyons was in her estimation a woman of unchaste character; all of which but tended to show that the language used in reference to the appellee was intended by the speaker to be understood, and was understood by the hearer, to mean that Bettie Lyons was a common prostitute, and that of like character was the appellee. It was not error to admit such testimony. Townshend on Slander, 365.

The testimony of James M. and Mary F. Lund, tending to show that, after the institution of this suit, Mrs. Zeliff used language of similar import to that made the foundation of the action, in reference to the appellee, while not admissible as a cause of action, was admissible for the purpose of showing the malice of the speaker in using the language on which the action was based. Townshend on Slander, 395, 396; Odgers on Libel and Slander, 271; Hesler *v.* Degant, 3 Ind., 501; Williams *v.* Harrison, 3 Mo., 411; Hutch *v.* Potter, 2 Gilm., 730; Schrimper *v.* Heilman, 24 Iowa, 505; Kean *v.* McLaughlin, 2 S. & R., 469; Scott *v.* Mortsinger, 2 Blackf., 444.

It is urged that the court erred in refusing to give the first and fourth charges asked by the appellants.

The first charge refused is as follows: "Words charging a woman

with unchastity as alleged in plaintiff's petition are not of themselves actionable, and in order that plaintiff recover against defendants, the testimony introduced must be sufficient to satisfy your minds that the words therein charged were uttered, spoken and published by the defendant, Deliza Zeliff, as alleged, or some one or more of them constituting in themselves a slander, and that said words so uttered, spoken and published, were so uttered, spoken and published of and concerning the plaintiff in this suit, and with the intent to injure her character, and were so understood at the time by those to whom the same were spoken, and in consequence of the uttering, speaking and publishing thereof plaintiff has sustained loss and been damaged."

The fourth charge refused is as follows: "If you should believe from the evidence that the defamatory words charged to have been uttered and published of and concerning plaintiff's character were so uttered and published with the intent to injure plaintiff, but that plaintiff has not sustained any loss or damage in consequence thereof, then you will find for defendants."

The averments of defamatory language set out in the petition are: "She (meaning the plaintiff) is a base woman."  "She (meaning the plaintiff) was kept all last year by the son of a widow who lived near Jennings (meaning that plaintiff was kept as a mistress by a man who lived during the preceding year near the house of J. B. Jennings, the plaintiff's father, and was guilty in conjunction with said man of the crime of adultery and fornication)."

The petition, after setting out a colloquy between a witness and Mrs. Zeliff in regard to Bettie Lyons, tending to show that in her estimation Bettie Lyons was a common prostitute who had lived in a house on the place of Zeliff, which at the time the language was used was occupied by the father of Miss Jennings, the appellee, she being the only unmarried female living in the house at the time, alleged that the following language was used by Mrs. Zeliff in reference to the appellee: "We have got another woman in the same house just like that girl (meaning thereby the said Bettie Lyons, and that plaintiff was a low woman and would prostitute her person with men, and that she had been guilty of the crime of adultery and fornication)."

The language first set out is broad enough to contain a charge either of adultery or fornication, left, however, by the language, indefinite as to which offense was intended; the language not specifying whether the man with whom the improper conduct was alleged to have occurred was married or single. The language being thus

indefinite, we are of the opinion that the appellee was not bound at her peril to select the person to whom the language applied, and to aver that he was married or single, in order definitely to determine whether the language used amounted to a charge of adultery or to a charge of fornication. In criminal cases only such averment would be necessary. The language used did not substantially charge the offense of adultery or fornication, which are offenses known to the criminal laws of this state, and may be prosecuted by indictment and punished. Penal Code, 333–338.

The other language made the basis of the action, under the averments of the petition and the proof made by the plaintiff, would constitute substantially the offense of slander as known and defined by the Penal Code of this state, which may be prosecuted by indictment and punished by fine and imprisonment. Penal Code, 645, 646.

In actions of this character it is not essential that the language used should, with technical accuracy, as would be required in an indictment, charge the commission of a crime; words calculated to induce hearers to believe that the person of whom they are spoken is guilty of a crime, in this respect are sufficient. Townshend on Slander, 178; Drummond v. Leslie, 5 Blackford, 455; Cass v. Anderson, 33 Vt., 182; Miller v. Miller, 8 Johns., 75; Rundell v. Butler, 7 Barb., 260.

There is some conflict of opinion as to the character of crime which must be imputed by words to make them actionable *per se*. We have not the time or disposition to review, in this opinion, the cases bearing on this question; but we believe that the great weight of authority establishes the proposition that: An accusation is actionable whenever an offense is charged which, if proved, would subject the accused person to a punishment, though not such as is known in the books, technically, as an ignominious punishment, if the accusation be such as to bring disgrace on the person of whom the words are spoken; words which impute to the person of whom they are spoken a character, a moral turpitude, which would exclude him from association with respectable persons. Character for moral turpitude bars the doors of society against its possessor, as completely as could a charge against one of having the most loathsome disease, which is held to be actionable *per se;* and it is difficult to see, if the one be actionable *per se*, why the other should not be. They may bring equally pecuniary loss and mental anguish. Miller v. Parish, 8 Pick., 385; Brooker v. Coffin, 5 Johns., 191; Hoag v. Hatch, 23 Conn., 590; Ridway v. Gray, 31 Vt., 292; Andres v.

Koppenheafer, 3 S. & R., 255; McCuen v. Ludlum, 2 Harrison (N. J.), 16; Giddens v. Mirk, 4 Ga., 369; Burton v. Burton, 3 G. Greene, 316; Gage v. Shelton, 3 Rich., 250; Wright v. Paige, 36 Barb., 438.

Tested by this rule, which is more restrictive than that followed in some of the states, which hold that all that it is essential to show to make words actionable *per se* is that they impute to the person of whom they are spoken some crime or offense punishable criminally by law, there can be no doubt that the language alleged to have been spoken is actionable *per se.*

This being true, the court correctly refused to give the instructions asked; for they assumed that the words were not actionable *per se;* were calculated to induce the jury to believe that it was their province, on their own judgments, to determine whether the words were actionable *per se;* they assumed not only that an intent to injure the character of the person of whom the words were spoken must be shown by the evidence to have existed in the mind of the speaker, but that the person to whom the words were spoken must have understood them to have been spoken with intent to injure; and they directly informed the jury that the appellee could not recover, even if the defamatory words alleged were published of and concerning her, with intent to injure her, unless special damage was shown by the testimony. In all these respects, the language being actionable *per se,* the charges asked were erroneous.

The second charge asked and refused involved the same idea as the charges just considered, and was misleading, but in so far as it might have been given, if presented in an unobjectionable manner and connection, it was embraced in the charge of the court.

The third charge asked and refused informed the jury that the appellee could not " recover damages on account of. her wounded feelings nor enfeebled health, and incapacity to perform labor, but the loss sustained by her must be to her reputation and sustained through the conduct of others."

Wounded feelings, enfeebled health and incapacity to perform labor, as the result of the words spoken, was alleged, and there was some evidence tending to show damage in these respects, and we are unable to see why a jury should not take them into consideration in estimating the amount of damage to which the appellee might be entitled, if, in the opinion of the jury, from the evidence, damage had resulted to the plaintiff in these respects from the published words of the defendant.

Under the averments of the petition, the damage to which the plaintiff might be entitled could not be restricted to such loss as

she sustained by injury to her reputation, nor to such damage as would be a fair compensation to her for the shame and mortification to which she might be subjected, through the conduct of others towards her, caused by the defamatory language alleged.

The fifth instruction, asked and refused, in so far as proper was given in the charge of the court. The same may be said of the sixth instruction asked and refused.

The court in effect charged the jury that they might find in favor of the plaintiff exemplary damages, if they believed that the words alleged to have been spoken by the defendant, of and concerning the plaintiff, were spoken by the defendant, she being prompted to speak them by malice, or with intention and purpose to injure the plaintiff thereby.

After this charge was given, the defendant asked the court, in effect, to charge the jury that defamatory language other than that set out in the petition could not be considered for the purpose of increasing the damage sustained by the plaintiff in consequence of the use of that set out in the petition as the cause of action; but that such other defamatory language might be considered for the purpose of determining whether the language charged in the petition was uttered and published maliciously and with intent to injure the plaintiff.

The charges thus asked also informed the jury they might consider defamatory language not set up in the petition for the purpose of determining whether the language alleged was spoken maliciously and with a specific intent to injure. These charges were refused, and we are of the opinion that this action of the court was erroneous.

The petition stated facts which, if proved, would entitle the plaintiff to damages, exemplary as well as compensatory; but the one was not separated from the other, as should be done in the pleadings in cases of this character; to this, however, no exception was taken.

The compensatory damages to which the appellee would be entitled, if a jury find that the defamatory language alleged was uttered and published, of and concerning her, by the defendant, would be such as directly or indirectly, as an ordinary or probable result, would flow from the use of the language used. This could not be in any way illustrated by proof of other defamatory language.

The law presumes that a person intends those results to follow which are the ordinary and natural effects of his voluntary act; and hence, from the acts alone, a jury may infer an intention to injure

another; and so strong may be such inference, as to justify a jury in concluding that the act was prompted by such malice or deliberate intention, wantonly to injure another, as to warrant the imposition of exemplary damages. Intent was immaterial so far as actual damage, direct or indirect, was concerned.

In this cause the plaintiff was not content to rest on proof of the publication of the defamatory language alleged in the petition as the cause of action, and its probable and ordinary effect, as sufficient evidence of malice, and deliberate and wanton intention to injure her; but, for the purpose of more clearly manifesting the *animus* of the defendant, introduced evidence of defamatory language, other than that alleged, published after the institution of this action. Such evidence was only admissible for the purpose of showing malice, and wanton and deliberate intention.to wrong, in order to recover exemplary damages, which the law gives in such cases; and the court should have informed the jury, in some way, that they could only consider such evidence for some such purpose. Townshend, 393; Scott *v.* McKinnish, 15 Ala., 662; Litton *v.* Young, 2 Metc. (Ky.), 558.

Although the charge given, so far as it went, was clear and fair, yet it did not in any part inform the jury of the purpose for which alone they might consider the defamatory language not alleged, of which there was evidence.

How far the jury may have considered such evidence in determining whether that alleged was uttered and published, or as a separate and independent ground for compensatory damages, we have no means of ascertaining. It would seem that, in cases in which evidence is admitted solely upon some particular issue in a cause, the jury should be instructed not to consider it upon any other.

The eighth and ninth instructions asked by the defendants were of this character, and should have been given.

The tenth instruction asked and refused was properly refused; for it proceeded on the theory that the language used was not actionable *per se.*

The eleventh was properly refused; for there was no fact in the case which would have justified a charge on the defense of limitation.

The correctness of the ruling of the court below, in giving the first and second instructions to the jury, follows from what we have already said in considering the rulings of the court in refusing to give instructions asked by the defendants.

It is urged that the court erred in instructing the jury that they

might, under circumstances which would ordinarily justify the giving of exemplary damages, give exemplary damages against the husband of Mrs. Zeliff as well as against her. This is upon the theory that the malice of the wife cannot be imputed to the husband.

That such is the rule in actions against a master, for injuries inflicted by a servant, has been recognized in several cases by this court; unless it be shown that the master has so acted as to justify the imposition of such damages on account of his own fraud, malice, gross negligence or oppression, or unless it be shown that the act of the agent was adopted or ratified by the master. Hays v. H. & G. N. R. R. Co., 46 Tex., 273; G., H. & S. A. R'y Co. v. Donahoe, 56 Tex., 163.

The ground of the liability of a husband for damages resulting from the use of defamatory language by his wife, in reference to another, is not that she is his servant or agent; for if this were the ground, it would follow that the husband would only be liable in such actions when it was shown that the language was used in the course of the husband's business. That, in actions of this character (for words spoken), would rarely, if ever, be the case.

The common law, except in so far as it is modified by the constitution or statutes of this state, regulates the relationship of husband and wife, and his liability for her torts. Many changes from the common law have been made by statute in reference to property rights of married women; but we know of no statute which in any respect changes or alters the liability of the husband for the torts of the wife from that imposed by the common law. Under that law they are deemed one person; and the husband is liable to the same measure of pecuniary responsibility for the torts of the wife as though the act were his own.

In the case of McQueen v. Fulgham, 27 Tex., 467, it seems to have been contended that the statutes of this state, affecting the rights of married women, had changed the liability imposed by the common law upon the husband for the torts of the wife, and in disposing of the question it was said: "It is insisted, however, that the common law doctrine upon this subject is abrogated in this state by our statutes regulating marital rights. With us the separate identity of the wife, with respect to her property, is not merged in the husband. Her property is not vested in him by marriage. But the common law rule holding the husband responsible for the wife's torts does not rest entirely upon the ground that he takes by marriage all of her personal property, and that she is presumed to have

no separate estate. It rests, perhaps, mainly upon the supposition that her acts are the result of the superior will and influence of the husband. Owing to the intimate relation between husband and wife, and to the nature of the control given him by law and social usage over her conduct and actions, it would be difficult, if not impossible, for the courts to determine when she had acted at her own instance, and when she was guided by his dictation. While our statutes are framed with a view of securing to the wife her separate property, and of sedulously protecting her, with reference to it, against the recognized and controlling influence of the husband over her conduct, it would be a stretch of judicial authority to hold that the common law responsibility attaching to him for the acts of the wife is by mere implication abolished. We see, therefore, no objection to the prayer of the petition for a general judgment."

In Austin v. Wilson, 4 Cush., 274, which was a case like the present, in which exemplary damages were sought against a husband, the court, without passing on the question whether exemplary damages could be recovered in any case, held that such damages could not be recovered for an injury punishable by indictment; but on the question of liability of the husband said: "We do not hold that smaller damages ought to have been assessed, in this case, than would have been legally recoverable if the libel had been published by the wife while sole, and the action had been against her alone. A husband is liable for his wife's acts, when liable at all, to the same extent as if she alone was answerable."

That exemplary damages may be recovered in this state, under given and well defined circumstances, is not an open question; and the fact that the defendant may be punished criminally for the same act for which exemplary damages are claimed does not affect the right so to recover. Cole v. Tucker, 6 Tex., 266; Hall v. O'Malley, 49 Tex., 73.

That in an action such as this a general judgment might be rendered against both husband and wife seems to be well settled. Smith v. Taylor, 11 Ga., 22; Yeates v. Reed, 4 Blackford, 465.

In the case last named, it was held that the effort of the husband to prevent the circulation of the slanderous words could not be proved, even in mitigation of damages.

In the case of Martin v. Robson, 65 Ill., 130, it seems to have been held, under the statutes of Illinois, which give to the wife much more extended powers in reference to her own actions, and services, and property rights, than do the statutes of this state, that a husband was not liable for the torts of the wife committed during coverture, in which he in no manner participated.

While not disposed to adopt the reasoning of the court in that case, through which it was held that the common law liability of the husband for the torts of the wife was abolished by reason of the statutes of that state affecting marital rights, yet we are of the opinion that it would lead to results, in reference to the primary obligation to pay such judgment as may be rendered in cases like this, even under the statutes of this state, most equitable. While giving to the injured person the full measure and means of redress out of the separate estates of both the husband and wife, and out of the common estate, yet, as between the husband and wife, if the husband in no way participated in the wrong, it would seem but equitable that her separate estate should be first applied to the payment of the judgment which may be recovered in consequence of her own wrong; and if this be not sufficient, that then resort be made next to the common estate; after which, if necessary, resort may be had to the separate estate of the husband. So the judgment in this case directed; and we are of the opinion correctly directed.

This question was considered, but, not being necessary to a decision of the case, was not decided, in the case of McQueen v. Fulgham, 27 Tex., 467.

The irregularities in reference to the several verdicts brought into court were very great, and were such as ought not to occur in any case.

How far the last verdict may have been influenced by the colloquy between the counsel for plaintiff and the judge who tried the cause it is impossible to tell. The several verdicts bear strong evidence of the fact that the jury had no clear understanding of their duties in the case.

This most probably resulted, largely, from the irregular manner in which the claims of the plaintiff for compensatory and exemplary damages were presented in the pleadings. Such claims should be severed in the pleadings that the court may be enabled properly to present the case to a jury, and to know whether the verdict is such as the pleadings justify.

As the judgment will be reversed, it is not necessary to say more in reference to the verdict or pleadings.

All other matters presented by the assignments of error have been considered, but need not be further noticed.

For the reasons indicated, the judgment of the court below is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered April 29, 1884.]