LEHMANN v. MEDACK et al.

(Court of Civil Appeals of Texas. San Antonio. Dec. 11, 1912. Rehearing Denied Jan. 8, 1913.)

1. APPEAL AND ERROR (§ 680*) — RECORD — WHAT TO CONTAIN.
Exceptions to allegations of the original petition could not be reviewed, where such petition was not included in the record, and the allegations in question were not pleaded in the amended petition thereafter filed.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2880–2882; Dec. Dig. § 680.*]

2. APPEAL AND ERROR (§ 680*) — RECORD — OBJECTIONS TO RULINGS ON DEMURRER— WAIVER BY AMENDMENT.
Where, after exceptions to allegations of a petition are sustained, plaintiff files an amended petition, he should, in order to present the error in sustaining such exceptions on appeal, repeat such allegations in the amended petition.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2880–2882; Dec. Dig. § 680.*]

3. APPEAL AND ERROR (§ 500*) — RECORD — WHAT TO CONTAIN.
Alleged errors in sustaining exceptions to a petition cannot be reviewed where there is no order or judgment in the record showing that the trial court ever acted on such exceptions.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. § 500.*]

4. TRIAL (§ 207*) — INSTRUCTIONS—LIMITING EFFECT OF EVIDENCE.
In an action for slander, where defendant did not deny making statements concerning plaintiff which were not pleaded, the court properly limited consideration thereof to the question of malice, instead of permitting them to be considered as tending to impeach defendant.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 498, 499, 501; Dec. Dig. § 207.*]

5. LIBEL AND SLANDER (§ 44*)—PRIVILEGED COMMUNICATIONS.
Statements concerning the character of an unmarried daughter, whose father was dead, to her mother, with whom she lived, in response to the mother's inquiries, were privileged, and would not form a basis for an action for slander.
[Ed. Note.—For other cases, see Libel and Slander, Cent.Dig. §§ 133–137; Dec.Dig. § 44.*]

6. LIBEL AND SLANDER (§ 19*)—QUESTIONS FOR JURY—MEANING OF LANGUAGE.
In an action for slander, the jury must consider only the actual language used in the

light of what it meant to the ordinary hearer, and may not place a fanciful construction thereon, or draw far-fetched or forced or strained conclusions therefrom.
[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 98, 99; Dec. Dig. § 19.*]

7. EVIDENCE (§ 472*)—QUESTIONS FOR JURY—MEANING OF LANGUAGE.
In an action for slander, the jury, and not the witnesses, are to draw the conclusion as to what was intended by ordinary words used, and hence it was not error to withdraw testimony as to what meaning witnesses thought certain well-known common words conveyed.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2186–2195; Dec. Dig. § 472.*]

8. LIBEL AND SLANDER (§ 4*) — MALICE — WORDS IMPUTING IMMORALITY.
Since words imputing want of chastity are actionable per se only by force of Pen. Code 1911, art. 1180, making the utterance of such words falsely and maliciously, or falsely and wantonly, indictable, such words are actionable only where they are uttered falsely and maliciously, or falsely and wantonly, and the court properly so charged, especially where plaintiff alleged that the statements concerning her were false, malicious, and slanderous, inspired by malice, hatred and ill will, and were spoken wrongfully, maliciously, and oppressively.
[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 111; Dec. Dig. § 4.*]

9. HUSBAND AND WIFE (§ 229*)—EVIDENCE— COMPETENCY.
In an action for slander against a married woman and her husband, where it was not alleged that her husband ratified and reiterated her slanderous statements, evidence that he agreed to what she said and sought to sustain her in it was properly excluded.
[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 816–834, 841–843; Dec. Dig. § 229.*]

10. TRIAL (§ 140*)—QUESTIONS FOR JURY— CREDIBILITY OF WITNESSES.
In a slander case, as in all others, the jury are the exclusive judges of the credibility of witnesses, and the weight to be given their evidence.
[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 334, 335; Dec. Dig. § 140.*]

11. LIBEL AND SLANDER (§ 112*)—EVIDENCE —SUFFICIENCY.
In an action for slander, where the testimony of a witness as to vile statements made by defendant concerning plaintiff was not corroborated, and was contradicted by defendant, the jury were justified in rejecting it as unworthy of credence.
[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 325–341; Dec. Dig. § 112.*]

Appeal from District Court, Fayette County; L. W. Moore, Judge.

Action by Mary Lehmann against Mary Medack and another. From a judgment for defendants, plaintiff appeals. Affirmed.

John T. Duncan, of La Grange, for appellant. Watson & Simmang, of Giddings, for appellees.

FLY, C. J. This is an action for damages instituted by appellant against Mary Medack and her husband, John Medack. The damages were alleged to have accrued by reason

---

of certain language used by Mary Medack imputing a want of chastity to appellant, a young unmarried woman, in falsely circulating that appellant sustained improper relations with Otto Riske, a married man. Appellees filed general and special demurrers, pleaded general denial, and answered, setting up facts to the effect that, while Mrs. Riske was sick and almost at the point of death, appellant had won the affection of her husband, and the said Mrs. Riske had made known the acts of her husband with appellant to her sister Mary Medack, and requested her to tell appellant and her mother to come to the house of the sick woman, that she might talk to them, and Mary Medack had delivered the message to appellant and her mother, and, upon being pressed by them as to why Mrs. Riske wanted to see them, Mary Medack had told them what Mrs. Riske had said, and that her language was therefore privileged. The cause was tried by jury, and resulted in a verdict and judgment for appellees.

[1-3] The first and second assignments of error assail the action of the court in sustaining exceptions to certain portions of the original petition containing certain language alleged to be slanderous. The exceptions were filed in 1910, and the amended petition, upon which the cause was tried, was filed in April, 1911. The exceptions were addressed, as a matter of course, to the original petition, but that petition is not included in the record, and the allegations to which exceptions were sustained were not repleaded in the amended petition. Those allegations should have been repeated in the amended petition in order to present the matter of the exceptions to this court. This court, under the state of the record, has no basis for action on the sustaining of the exceptions to certain pleadings whose contents are not known to this court, and, further, there is no order nor judgment in the record indicating that the trial court ever acted on any exceptions to the petition. The assignments are overruled.

[4] The third assignment claims error in giving the jury special charge No. 1 requested by appellees. In that charge the jury were instructed that the testimony of certain witnesses as to declarations made by Mary Medack in regard to appellant, which had not been set out in the petition, should be considered only on the question of malice and should not form the basis for damages, unless damages were given on the language alleged and proved. The charge is assailed on the ground that the statements of the witnesses should also have been considered as tending to impeach Mary Medack. There is nothing in the statement of appellant that indicates that Mary Medack denied making the statements sworn to by the witnesses, and, if it was permitted to show malice on the part of Mary Medack, it served every purpose for which it was permissible. The court in his charge allowed the testimony introduced to show contradictory statements made by Mary Medack to be considered on the subject of impeachment by the jury. There was no conflict between the two charges. The special charge was directly in line with authorities on the subject. Newell on Slander & Libel, 772 et seq.

[5] The fourth assignment of error complains of a special charge requested by appellees and given by the court, to the effect that, where a parent makes inquiry of another as to the character of his or her child, statements made in reply to such inquiry are privileged, and slander cannot be predicated thereon. The language to which the special charge was addressed was that of Mary Medack to Mrs. Lehmann, the mother of appellant, in response to her questions. The mother and daughter were living together, the father being dead, and the statements made to Mrs. Lehmann, the mother of appellee, were made in response to inquiries addressed by Mrs. Lehmann, in the presence and hearing of her daughter, to Mrs. Medack. Mrs. Lehmann had the right, and it was her moral duty, to investigate the charges against her unmarried daughter, who was living with her and under her care and protection, with or without the authority of the daughter, and replies made in good faith to inquiries made pursuant to such investigation would be privileged, and would not form a basis for an action for slander. Rosenbaum v. Roche, 46 Tex. Civ. App. 237, 101 S. W. 1164; Rude v. Nass, 79 Wis. 321, 48 N. W. 555, 24 Am. St. Rep. 717. The rule as stated in the latter case is: "Where words imputing misconduct to another are spoken by one having a duty to perform, and the words are spoken in good faith, and in the belief that it comes within the discharge of that duty, or where they are spoken in good faith to those who have an interest in the communication, and a right to know and act upon the facts stated, no presumption of malice arises from the speaking of the words, and therefore no action can be maintained in such case without proof of express malice." That rule was approved in Railway v. Richmond, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794. In the cases of Hix v. State (Cr. App.) 20 S. W. 550, and Davis v. State (Cr. App.) 22 S. W. 979, it was held that statements which would otherwise be slanderous are privileged if made at the solicitation of a parent of the slandered person. We doubt very much that the language used to Mrs. Lehmann was slanderous if it had been used to any one. The inferences and inuendoes drawn from the language are far-fetched, and do not naturally arise from the language used. There was no direct charge of unchaste conduct, but the language is as fully consistent with a charge of mere improprieties or indiscretions, not involving anything criminal, as with a charge of unchastity.

[6, 7] The charge complained of in the fifth assignment is evidently based upon the language used by the Supreme Court in Belo v. Smith, 91 Tex. 221, 42 S. W. 850, wherein it is held: "For in defamatory language it is not so much the idea which the speaker or writer intends to convey, as what he does in fact convey." That was contained in the charge assailed by appellant. The jury had no right to consider any but the actual language used by Mary Medack, and it was their duty to consider it in the light of what it meant to the ordinary hearer, and they had no authority to place a fanciful construction upon the language and draw far-fetched, forced, and strained conclusions from it. The jury, and not the witnesses, were to draw the conclusion as to what was intended by the ordinary words used; and it was not error to withdraw any testimony as to what meaning witnesses thought certain well known common words conveyed. No special damages were alleged or proved.

[8] Slander is defined in this state as falsely and maliciously or falsely and wantonly "imputing to any female, married or unmarried, a want of chastity, and we fail to perceive the force of an objection to a charge that required the jury, in order to return a verdict for appellant, to find that the accusation was either falsely and maliciously or falsely and wantonly made." Article 1180, Rev. Crim. Stats. 1911 (Pen. Code). This did not increase, but rather lightened the burdens resting upon appellant. She alleged that the statements were "false, malicious and slanderous," that Mary Medack was "inspired by malice, hatred, and ill will," and that the words were spoken wrongfully, maliciously, and oppressively. The burdens required by the charge were lighter than those assumed in the pleadings. Words to be slanderous must be false and malicious, and the words "false and wanton" merely lighten the burdens of the appellant in proving her case. The court instructed the jury that malice would be presumed on proof of the falsity of the slanderous language. Under the common law, which was followed for many years in Texas on this subject, spoken words imputing the want of chastity to a female were not actionable. Linney v. Maton, 13 Tex. 449; McQween v. Fulgham, 27 Tex. 464; Ross v. Fitch, 58 Tex. 148; Zeliff v. Jennings, 61 Tex. 458. It is now held to be actionable because of the act of 1879, now the article of the Criminal Statutes hereinbefore cited, which made slander an indictable offense. Hatcher v. Range, 98 Tex. 85, 81 S. W. 289. That law is the only authority for sustaining this action in this state, and the Supreme Court, after so holding, says: "We therefore conclude that under the law as it now exists in this state words spoken or written which 'falsely and maliciously, or falsely and wantonly' impute

to a female want of chastity are actionable without showing special damage arising therefrom." No special damages having been alleged or proved, appellant could only recover under the terms of the criminal statute.

[9] The statements made by John Medack were not made the foundation of the suit for damages, and they were properly excluded by the court. If it had been alleged that the husband had ratified and reiterated the slanderous statements of his wife, it might have been admissible, but, under the pleadings in this case, the testimony was utterly irrelevant, incompetent, and immaterial. If he did agree to what she said, and seek to sustain her in it, that neither increased nor diminished his liability for her slanderous language.

[10] The jury in this case, as in all others, are made the exclusive judges of the credibility of the witnesses, and the weight to be given their evidence, and, whatever might have been the views of this court as to the evidence submitted as an original proposition, we are compelled to hold that there is testimony which tends to support the verdict. The evidence exonerated appellant and tended to show that her character for chastity was never questioned, and that all the trouble grew out of the jealousy of the sick wife of Otto Riske, who was acting the vigilant sentinel upon the conduct of her husband. In her desire to serve her sister, her suspicions were communicated by Mary Medack to appellant, and Mary Medack swore that she knew appellant was all right, but wanted to relieve the anxieties of her troubled sister.

[11] Mrs. Medack denied the vile statements about appellant attributed to her by Herman Domaschk, a 20 year old boy, who was corroborated by no one. The jury was justified in rejecting his testimony as unworthy of credence.

The judgment is affirmed.