## PERRY BROS. VARIETY STORES, Inc. v. LAYTON et al.   (No. 1598.)

Court of Civil Appeals of Texas. Beaumont.
May 3, 1928.

Rehearing Denied June 6, 1928.

1. **Libel and slander** ⊂⇒83—Petition alleging that manager of store charged plaintiff with taking bloomers, knowing charge was false, held not defective for failing to allege malice.

In action for slander petition, which alleged that manager of store charged plaintiff with taking bloomers, knowing that charge was false at time he made it, *held* not defective for failing to allege that manager was actuated by malice, since, if allegation was true, charge could not have been made in good faith.

2. **Libel and slander** ⊂⇒44(1)—Store manager's statement charging woman with taking bloomers held qualifiedly privileged, when made in good faith to protect owners.

Where manager of store charged woman with taking bloomers, believing that she had taken them from counter as she left store, charge being made in discharge of duty manager owed to store owners, and without malice and in good faith, *held* that, occasion being qualifiedly privileged, charge was not actionable.

3. **Libel and slander** ⊂⇒50½—Manager of store, charging woman with having taking bloomers, held not to have exceeded qualified privilege because several clerks were present.

Where manager of store, in protection of owner's interest, charged woman with having taken bloomers, in presence of several clerks,

---

*held* that qualified privilege was not exceeded, since clerks were also interested in protecting owner's interest.

**4. Libel and slander ⬅50½—Qualified privilege held not lost because alleged slanderous statement was made in presence of two women casually present in store.**

Where manager of store, protecting interests of owner, charged woman with having taken bloomers, in presence of two other women who were merely casually present, and who manager did not intend should hear, *held* that qualified privilege was not lost by fact that charge complained of was incidentally brought to attention of others than those for whom it was intended.

**5. Libel and slander ⬅51(1)—Refusal to peremptorily instruct jury held error, in action against store owner for alleged slanderous statement of manager, where qualified privilege existed and malice was lacking.**

Where manager of store, protecting interests of owners, charged woman with having taken bloomers, in presence of several clerks and two other women who were casually in store, it being intent of manager to speak to woman as quietly as he could, *held* that refusal to peremptorily instruct jury in favor of store owners was error, since there was no malice, and qualified privilege was not exceeded.

**6. Libel and slander ⬅123(8)—Where facts are undisputed, court must determine whether charge made basis for action for slander was privileged.**

It is always duty of trial court, where facts are undisputed, to determine whether or not charge made basis of action for slander was or was not privileged, either absolutely or qualifiedly.

**7. Libel and slander ⬅123(8)—Whether privilege was exceeded was, under undisputed evidence, question for court.**

In action for slander, where it is claimed that privilege relied on was exceeded, and evidence on that point is undisputed, it is duty of trial court to determine whether or not claimed privilege was exceeded.

**8. Appeal and error ⬅1175(5)—Appellate court must reverse and render judgment, where trial court has failed to peremptorily instruct verdict in performance of duty.**

Where, on undisputed facts of case, there is no issue of fact for jury, but it is trial court's duty to peremptorily instruct verdict for defendant, and trial court fails to discharge that duty, it becomes duty of appellate court to reverse and render judgment in favor of defendant.

Walker, J., dissenting.

Appeal from District Court, Nacogdoches County; C. A. Hodges, Judge.

Action by Grace L. Layton and husband against the Perry Bros. Variety Stores, Inc.

Judgment for the plaintiffs, and the defendant appeals. Reversed and rendered.

Adams & McAlister and C. C. Watson, all of Nacogdoches, and Fairchild & Redditt, of Lufkin, for appellant.

Seale & Denman, and V. E. Middlebrook, all of Nacogdoches, for appellees.

HIGHTOWER, C. J. This is an action brought by Mrs. Grace L. Layton, joined pro forma by her husband, Virgil Layton, against Perry Bros. Variety Stores, for recovery of of damages for slander. Mrs. Layton, in her petition, alleged, in substance, that on or about April 21, 1926, she went into the defendant's store in the city of Nacogdoches, Tex., for the purpose of purchasing a small article of dry goods, to wit, some dimity cloth and other small articles, and that, while she was in there, and after she had purchased the articles, and was about to leave the store, one Grady Barr, who was an employee of defendant, and manager of the store said to plaintiff: "Where are those bloomers you took from the store while ago?" It was alleged that, by these words uttered to Mrs. Layton, Barr meant to charge, and did charge, her with theft of a pair of bloomers from defendant's store. It was further alleged by Mrs. Layton that she did not take the pair of bloomers as charged by Mr. Barr, and was not guilty of the crime imputed to her, and that she at the time told Mr. Barr that she had not taken the pair of bloomers, as charged by him, and that she was willing for him to search her, but that Mr. Barr insisted that she had stolen the bloomers from the store, though he declined to search her as she requested.

It was alleged, in substance, that the words complained of and just quoted as charging Mrs. Layton with the theft of the pair of bloomers were uttered in an angry tone of voice, and that the charge was false, and known to be false by Mr. Barr, at the time it was made. There was no allegation in the petition that Mr. Barr, in making the charge complained of, was actuated by malice, but it was alleged in the petition that the accusation against her was not made in good faith. The petition further alleged, in substance, that Mrs. Layton was greatly shocked and grieved on account of the charge made by Mr. Barr against her, and that she became suddenly very ill in consequence thereof, and remained ill and confined to her bed for several days, and that her health had become greatly impaired, and that she had suffered actual damages in the sum of $10,000 in consequence of the slanderous charge made by Mr. Barr against her.

The defendant answered by general demurrer, a number of special exceptions, a gener-

al denial, plea of the truth of the charge, and further that the utterance complained of as slanderous was made on a privileged occasion, and that defendant was not liable therefor. The general demurrer and all special exceptions were overruled, and the case was submitted to the jury upon five special issues, in answer to which the jury found: (1) That Grady Barr uttered the slanderous words to Mrs. Layton, as charged in her petition; (2) that the charge was false; (3) that persons other than Mrs. Layton heard the charge uttered by Mr. Barr against her; (4) that Mrs. Layton sustained actual damages in the sum of $6,000, in consequence of the charge against her; (5) that Mr. Barr made no apology to Mrs. Layton for making the charge against her.

The trial court did not submit any issue as to malice or bad faith on the part of Mr. Barr in making the charge against Mrs. Layton.

After the verdict had been returned, the court, upon plaintiff's motion therefor, entered judgment against defendant in favor of plaintiff Mrs. Grace L. Layton for actual damages in the sum of $6,000, and from that judgment this appeal is prosecuted.

Appellant challenges the verdict and judgment by a number of assignments of error, but, as we view the record, it will only be necessary to specifically mention two of appellant's contentions.

[1] The first contention is that the court erroneously overruled appellant's general demurrer, it being the contention of counsel for appellant that appellee's petition showed that the utterance complained of by her was made by Grady Barr, appellant's store manager, on a privileged occasion, and, that being so, in order to a recovery by the appellee Mrs. Layton, it was necessary that her petition allege that Grady Barr, in making the charge against her, was actuated by malice, and that, since there was no allegation of malice, the petition showed no cause of action, and the demurrer should have been sustained. We overrule this contention. Where one utters a slanderous charge against another, in order to defend on the ground of qualified privilege, there must be lack of malice and presence of good faith. While it is true that the petition did not allege that Grady Barr was actuated by malice in making the charge complained of, it did allege, as we have stated, that the charge was false, and known to be false by Grady Barr, at the time he made it, and, if that allegation was true, the charge made by Mr. Barr that Mrs. Layton had stolen a pair of bloomers could not have been made in good faith. We therefore hold that the trial court was not in error in overruling the general demurrer, and overrule appellant's contention on that point.

Appellant's next contention is that the trial court was in error in refusing to give its requested peremptory instruction. In this connection it is insisted that the evidence as a whole showed that the charge complained of by Mrs. Layton was qualifiedly privileged, and that Mr. Barr, in making the charge, was not actuated by malice, and also that he made the charge in good faith, believing at the time he did so that the charge was true. If this proposition advanced by appellant is supported by the evidence adduced upon the trial, which in nearly all material respects is without dispute, the contention must be sustained.

The facts upon which this judgment rests, as we gather them from the entire statement of facts, are as follows:

The appellant, Perry Bros. Variety Stores, is a private corporation, engaged in the mercantile business, and operates a chain of stores, about 22 in number, in different cities and towns in this state, one of which is in the city of Nacogdoches, and Grady Barr, at the time of the transaction here involved, was appellant's manager of the Nacogdoches store. On the morning of April 21, 1926, the plaintiff, Mrs. Grace L. Layton, and her mother-in-law, Mrs. Green B. Layton, and her sister-in-law, Mrs. Mary Anne Webb, all of whom lived in the city of Nacogdoches, at that time, went from their home to appellant's store in Nacogdoches to purchase some small articles of dry goods for the plaintiff Mrs. Layton. They rode in Mrs. Webb's automobile, and, when they got to the store, Mrs. Grace L. Layton, the plaintiff, and her sister-in-law, Mrs. Webb, got out of the car, and went into appellant's store, and Mrs. Layton purchased some blue dimity cloth, and, while it was being wrapped up for her, she was in conversation with Mr. Barr in the store, and during the conversation Mr. Barr engaged her, or made arrangements with her, to come to the store on Saturday of that week and work for the store as a saleslady, as the store would have on a special sale that day. After this engagement had been made, Mrs. Layton and Mrs. Webb started out of the store, and passed by the counter where bloomers were kept, and Mrs. Layton picked up a pair of bloomers, and was looking at them, and remarked to Mrs. Webb how cute and pretty the bloomers were, and then laid the bloomers back on the counter, and passed on to the cashier's desk, and got her package that she had purchased, and she and Mrs. Webb went out of the store and back to the car, which was standing near the store. After they got to the car, Mrs. Layton decided to go back into the store and purchase another small article, some lingerie tape, and Mrs. Webb went back into the store with her. Mrs. Layton bought the tape, and just before she departed from the store at that time, Mr. Grady Barr, appellant's manager, said to her, "I want to speak to you, Mrs. Layton"; whereupon Mr. Barr and Mrs. Layton walked back

near the center of the store, and Mr. Barr said to her, "Where are those bloomers you got while ago?" To this Mrs. Layton replied that she did not get any bloomers, but Mr. Barr insisted that she did get them, and told her so several times, and Mr. Barr, still insisting that she did get the bloomers, further said to Mrs. Layton, "Mrs. Layton, I want those bloomers you got while ago." Mrs. Layton then requested Mr. Barr to search her, and told him again that she did not get the bloomers. Thereupon Mr. Barr called to Miss Moorer, who was appellant's young lady cashier in the store, and asked Miss Moorer if she wrapped up any bloomers for Mrs. Layton that morning, to which Miss Moorer replied that she did not, and further stated that she did not see Mrs. Layton get any bloomers.

At the time Mr. Barr was talking to Mrs. Layton about the bloomers, there were three of appellant's clerks in the store besides Mr. Barr, a Miss Johnson, Miss Leitha Moorer, the cashier, and a Mr. Frank Crain. There were also present in the store, according to Mrs. Layton's testimony, two women whose names she did not know, and she had never found out who these women were up to the time of trial of this case. According to Mrs. Layton's testimony, these unknown women in the store were near enough to hear what Mr. Barr said to her at the time he accused her of taking the bloomers, and we will assume that these unknown women did hear what Mr. Barr said to Mrs. Layton at that time. And, according to Mrs. Layton's testimony, Miss Moorer, the cashier, and Frank Crain, one of the clerks, were near enough to hear what Mr. Barr said to Mrs. Layton at the time he accused her of taking the bloomers, though both Miss Moorer and Mr. Crain testified positively that they did not hear any part of the conversation between Mr. Barr and Mrs. Layton at that time.

After Mr. Barr had accused Mrs. Layton of taking the bloomers, and after she had repeatedly denied that she took them, and requested him to search her, which he refused to do, Mr. Barr advised Mrs. Layton not to say anything about what had occurred between them, for the reason, as he stated, that it might cause more trouble, and that it was better to let the matter drop where it was. Thereupon Mrs. Layton went out of the store and back to the car in which her mother-in-law and Mrs. Webb, her sister-in-law, were sitting, and she then told her mother-in-law and sister-in-law what had happened in the store, and that Mr. Barr had accused her of stealing a pair of bloomers. Mrs. Layton then got in the car, and her mother-in-law and sister-in-law then went into the appellant's store to talk to Mr. Barr about the matter. Mrs. Webb, the sister-in-law, stated to Mr. Barr, so she testified, in substance, that Mrs. Layton had not taken any bloomers from the store, and that the car was hers,

and that Mr. Barr could search the car for the bloomers, but Mr. Barr refused to do so. The mother-in-law also told Mr. Barr that Mrs. Layton did not bring any bloomers to the car, and that there was no bloomers in the car, and that Mrs. Layton did not have the bloomers at all. During this conversation between Mr. Barr, Mrs. Layton's mother-in-law, and Mrs. Webb, Mr. Barr, according to Mrs. Webb, spoke in a "medium" tone of voice, and did not appear to be angry. According to the testimony of the mother-in-law, Mrs. Green B. Layton, Mr. Barr did not speak in a "rough manner," and was not "discourteous." According to the testimony of both Mrs. Webb and the mother-in-law, Mr. Barr really believed that Mrs. Layton had taken the bloomers, as he had charged her with doing. While these three, Mr. Barr, Mrs. Green B. Layton, and Mrs. Webb, were still talking, somewhere about the center of the storeroom, Mrs. Layton got out of the car and came back into the store, and went up to where the conversation was going on, and in a very short time she fainted and fell on the floor, and it was necessary that she be carried to, and put in, the car, and Mr. Barr helped to carry her to the car, which Mrs. Webb drove away. Mrs. Layton was greatly shocked on account of the charge made by Mr. Barr against her, and was confined to her bed several days in consequence thereof, and up to the time of the trial she had been nervous and weak from the effects of the charge against her.

The undisputed evidence in the record shows that Mr. Grady Barr was appellant's manager of the Nacogdoches store, and that it was his duty, as well as the duty of all the clerks in the store, to see that the merchandise in the store was taken care of, and not stolen by any one, and to protect in general the interests of appellant in connection with the store. There is no evidence showing, or tending to show, who the two women were that were in appellant's store, other than the clerks, at the time Mr. Barr charged Mrs. Layton with taking the bloomers, nor was there any evidence showing, or tending to show, that these two women were in the store by the design or consent of Mr. Barr at the time he was talking to Mrs. Layton about the bloomers. All the evidence negatives the idea that these two women were present by design of Mr. Barr. On the contrary, if these two women were in the store, as testified by Mrs. Layton, all the evidence shows that they merely happened to be there, without design on the part of any one connected with the store, and were merely casually present.

[2] Since the undisputed evidence shows that it was Mr. Barr's duty to appellant to protect its merchandise in the store, if he in good faith believed that Mrs. Layton had stolen a pair of bloomers from appellant's store, as he in effect charged her with doing,

he had a right to make the charge and to recover from her the bloomers, if he could. In other words, Mr. Barr owed the duty to appellant to protect its interest in the store, and therefore the occasion giving rise to the charge made against Mrs. Layton was qualifiedly privileged; that is to say, the charge having been made by Mr. Barr in the discharge of his duty to appellant, it was privileged, and appellant is not liable for damages in consequence thereof, unless the charge was made with malice or in bad faith. Foley Bros. Dry Goods Co. v. McClain (Tex. Civ. App.) 231 S. W. 459. As we have stated above, there was neither allegation of malice, nor was there any proof of malice. There was an allegation of bad faith on the part of Barr in making the charge complained of, but, as we have shown, Mrs. Layton's mother-in-law and sister-in-law both testified, in substance, that Mr. Barr really believed that Mrs. Layton had taken the bloomers as he charged her with doing. If Barr really believed that Mrs. Layton had taken the bloomers from appellant's store, then certainly it cannot be said that the charge was made by him in bad faith. Aside from the evidence of the mother-in-law and sister-in-law, all the facts and circumstances in this case show that Mr. Barr really believed that Mrs. Layton had taken the bloomers from the bloomer counter, as he charged her with doing. Therefore, upon the undisputed evidence in this case, we are constrained to hold that the occasion on which the slanderous charge was made, as here complained of, was qualifiedly privileged; that is to say, the charge was made by Barr in the discharge of a duty that he owed to appellant, and without malice, and in good faith.

[3] It is insisted by able counsel for appellee, as we understand them, that, if the occasion giving rise to the charge made against Mrs. Layton was privileged or qualifiedly privileged, nevertheless the privilege was exceeded and abused, in that Mr. Barr made the charge to Mrs. Layton in the presence of others, who heard the charge, and that therefore the privilege was lost, and, the charge being slanderous per se and false, appellant was liable. Counsel for appellee seem to contend that, even if no one other than the clerks in appellant's store heard the charge made by Mr. Barr to Mrs. Layton, appellant would nevertheless be liable, because as they contend, the privilege was lost or exceeded if any one other than Mrs. Layton herself heard the charge made by Mr. Barr. With reference to this contention, it will suffice to say that the undisputed proof in this case shows that it was the duty of all of the clerks in appellant's store to protect its merchandise from theft or other depredation, and therefore the clerks in appellant's store, other than Mr. Barr, were as much interested in protecting, and it was as much their duty to protect, appellant's property in the store, as it was the duty of Mr. Barr himself, and we hold that the fact that appellant's clerks in the store, Miss Moorer, Mr. Crain, and Miss Johnson, heard the charge made by Mr. Barr to Mrs. Layton, if they did, would not take away, or detract from, the privilege under which Barr made the charge.

[4] As we have stated hereinbefore, the testimony of Mrs. Layton, considered in the most favorable light for her, was sufficient to show that the two women who happened to be in appellant's store at the time the charge against her was made by Mr. Barr heard the charge, but, as we have also said, the undisputed testimony of this record shows that these two women were merely casually present; that is to say, they were not present by the design of Mr. Barr or any one else connected with the store, and all the facts and circumstances go to show that is was not Mr. Barr's purpose and intention that these two women should hear what he said to Mrs. Layton about the bloomers, and therefore we hold that the presence of these two women, if they heard the charge made by Barr to Mrs. Layton, did not destroy or in any way affect the privilege under which the charge was made. We are not unmindful that cases may be found in which it was said throughout the discussion that a slanderous charge, in order to be qualifiedly privileged, must not be made in the presence of others who are in no manner interested in the matter, but we think that the weight of authority sustains the proposition that a qualified privilege is not lost by the mere fact that the charge complained of is accidentally brought to the attention of others than those for whom it was intended. On this point the rule as stated in 25 Cyc. p. 387, is as follows:

"A qualified privilege is not lost by the mere fact that the communication, whether oral or written is incidentally brought to the attention of others than for whom it was intended. Thus the mere fact that a communication is made in the hearing of others than the parties immediately interested will not of itself defeat the defense of privilege. But it has been held that the privilege is lost if strangers to the privileged occasion were present by the invitation or design of defendant."

[5, 6] Now, as we have already stated, there is not a word of testimony nor a circumstance in this record that shows, or tends to show, that these two women, whoever they were, were present in appellant's store by design of any of its employees, or with their invitation, to hear what Mr. Barr said to Mrs. Layton. On the contrary, the evidence shows that, when Mr. Barr accosted Mrs. Layton about the bloomers, he asked her to walk back from the front of the store to somewhere near the center. The proof shows that the store was approximately 60 feet long. Evidently it was Mr. Barr's pur-

pose to speak to Mrs. Layton as quietly as he could about the matter of taking the bloomers. Upon these facts as a whole, we hold that the occasion upon which the charge in question was made was qualifiedly privileged, and that, since there was neither malice nor lack of good faith on the part of Barr in making the charge, and since the privilege was not exceeded, there could be no recovery in damages against appellant, and the trial court erred in refusing to peremptorily instruct the jury in favor of appellant, as requested. It is always the duty of the trial court, where the facts are undisputed, to determine whether or not the charge made the basis of the action for slander was or was not privileged, either absolutely or qualifiedly. Caylor v. Nunn (Tex. Civ. App.) 235 S. W. 264; Publishing Co. v. Wilkins (Tex. Civ. App.) 218 S. W. 614.

[7, 8] It is also the rule in an action for slander where it is claimed that the privilege relied upon was exceeded and the evidence on that point is undisputed, that it is the duty of the trial court to determine whether or not the claimed privilege was exceeded. 37 C. J. 108. Upon the undisputed facts of this case, there was no issue of fact for the jury, but it was the trial court's duty to peremptorily instruct a verdict for appellant, and the trial court having failed in the discharge of that duty, it becomes the duty of this court to reverse and here render the judgment in favor of appellant.

Reversed and rendered.

O'QUINN, J. On original submission of this cause, I held myself disqualified to participate in the determination of the matter presented because of being a second cousin of the wife of one of the principal stockholders in Perry Bros. Variety Stores, the defendant and appellant here. Because of the relationship mentioned, I sincerely desired to take no part in the disposal of the case. When my associates failed to agree, and the question of my disqualification came up, they both were of the opinion that I was not disqualified. I based my disqualifications upon article 15, Revised Civil Statutes 1925, as derived from article 1584, Vernon's Complete Statutes 1920. Upon careful examination, I find that I am not disqualified. The individual members of an incorporated company are, in law, strangers to the artificial body created by law. So that a judge, though related within the third degree to a stockholder in a corporation, is not disqualified from sitting in the trial of a case in which the incorporation is a party. Wise County Coal Co. v. Carter Brothers, 3 Willson, Civ. Cas. Ct. App. § 306; Lewis v. Hillsboro Roller-Mill Co. (Tex. Civ. App.) 23 S. W. 338; Kingman-Texas Implement Co. v. Herring National Bank (Tex. Civ. App.) 153 S. W. 397.

From a careful and repeated consideration of the questions involved in the case, I have concluded that Chief Justice HIGHTOWER'S opinion announces the correct determination of the issues involved, and therefore I agree to the disposition of same as made by him.

WALKER, J. (dissenting). Believing with appellee that Mr. Barr exceeded his privilege, I am forced to dissent from the conclusion of my brethren reversing and rendering this case. To the facts stated by the majority of the court I would add only the following from Mrs. Layton's testimony:

"As to what tone of voice Mr. Barr was talking in when he asked me where those bloomers were. I will state that he talked loud and mad."

The law on appellees' proposition was thus stated by the Galveston court in Koehler v. Sircovich (Tex. Civ. App.) 269 S. W. 812:

"In none of the cases cited was it shown that the defamatory statements were made in the hearing of others in no way interested in the matter and in none of them was the good faith of the defendant drawn in question as in this case. The right of the defendant if he honestly believed that plaintiff had taken the money from the cash register to question her in regard to the matter and to make to her and all others who had any interest in the matter such statements in regard thereto as he had reasonable grounds to believe were true, seems to be well settled by the decisions of our courts. But this right cannot be extended into a license to publicly and falsely brand one as a thief, even though the accuser may not be actuated by malice in making the charge. It would seem upon principle and authority that the right to make such false statements, when made in good faith, is so restricted that they may only be made to those directly interested in their subject-matter and to whom the accuser is under a duty to communicate facts which he believes to be true."

The Supreme Court of Georgia in the well-reasoned case of Sheftall v. Railway Co., 123 Ga. 589, 51 S. E. 646, discussing this proposition, said:

"The persons to whom the statement is published must be limited to those to whom the interest to be promoted requires that the information should be given. If it be published to strangers, wholly without interest in the matter, the communication loses its privilege. Care must be taken that the words reach only those who are concerned to hear them."

As an exception to the general rule, that case recognized that the publishing in the presence of third persons whose presence was merely casual and not sought by the defendant would not destroy the privilege, "or if it appears that the presence of the third persons at the time of the publication was due to the act or conduct of the party complaining, the privilege would not be lost." But the court said:

"It would be otherwise if the defendant purposely sought an opportunity of making a communication prima facie privileged in the presence of the very persons who are most likely to act upon it to the prejudice of the plaintiff."

In enumerating the essentials of the defense of privilege, the court said:

"To make the defense of privilege complete in an action of libel, good faith, and interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a proper manner and to *proper parties* only, must appear. The absence of any one or more of these constituent elements will, as a general rule, prevent the party from relying upon the privilege. All of these questions are, however, questions of fact for the jury to determine according to the circumstances of each case under appropriate instructions from the court."

In Fields v. Bynum, 156 N. C. 413, 72 S. E. 449, the Supreme Court of North Carolina said:

"In the case of spoken words, the defendant must be careful in whose presence he speaks. While the accidental presence of a third person will not always take the case out of the privilege, it is otherwise if the defendant purposely selects an occasion where a number of persons are present."

On the principles thus announced, had Mr. Barr made a charge of theft to Mrs. Layton in the presence of strangers when she was examining the bloomers, all the conditions of a perfect qualified privilege would have existed as a matter of law. The communication, the occasion, Mr. Barr and Mrs. Layton would all have been within the principles of qualified privilege. The presence of strangers would have been merely casual, not sought by Mr. Barr, but due to the acts and conduct of Mrs. Layton. But he did not make the charge at the time and on the occasion created by the conduct of Mrs. Layton. He chose his own time and place and occasion.

Why did he not make the charge when Mrs. Layton was examining the bloomers? Why did he take her to the middle of the store to make the charge? Why did he make the charge in a loud and angry voice in the presence of strangers? I believe the law of qualified privilege was correctly stated by the Supreme Court of North Carolina and Georgia in the cited cases, and under those decisions a person, though qualifiedly privileged, who chooses his time and occasion to make a slanderous charge of theft, "must be careful" in whose presence he speaks, and must exercise care "that the words reach only those who are concerned to hear them"; and if, failing to exercise due care, the communication "be published to strangers, wholly without interest in the matter, the communication loses its privilege." The issue thus suggested was the issue upon which appellee predicated her case. Her pleadings are fully analyzed by the majority opinion. No issue of malice was submitted by the court, and all requested charges on that issue were refused. Appellee made only one issue—that the presence of third persons at the time the communication was made destroyed the privilege. That was the only issue submitted to the jury. The only proposition before us, then, is the proper construction of the facts on this case. My brethren, carefully reviewing the facts, say that as a matter of law the issue of loss of privilege was not made. Reviewing the same facts, I say on the authority cited that the issue was made. From the facts the jury could have found that the presence of strangers was not casual, but sought by Grady Barr, and that he sought the occasion that the charge might be given to the public. If I am correct, a finding in appellees' favor on such issues would establish her case. Being raised by the evidence, though not submitted in detail to the jury, the judgment of the trial court resolved all necessary issues in appellees' favor. I think the judgment should be affirmed.