## SKILLERN v. BROOKSHIRE et al.
### No. 2310.

Court of Civil Appeals of Texas. Beaumont.
Feb. 22, 1933.

Rehearing Denied April 5, 1933.

Seale & Thompson, of Nacogdoches, for appellant.

Adams & McAlister, of Nacogdoches, and J. J. Collins and R. W. Fairchild, both of Lufkin, for appellees.

WALKER, Chief Justice.

This was an action for slander by appellant, A. B. Skillern, against appellees Bryan J.

Brookshire and Everett B. McKay, doing business as partners under the firm name of Brookshire Bros. The case was tried to a jury and the judgment appealed from was upon a verdict instructed in favor of appellees. Appellant charged that appellee Bryan Brookshire addressed to him the following defamatory language: "You got that sugar here and you know it; because Bailey does not handle that kind of sugar." The facts are these: Appellees were operating a grocery store in the city of Nacogdoches, in Nacogdoches county, on the 2d day of May, 1931, under the name of Brookshire Bros. Their store room was so arranged that the customer could serve himself and have the goods, thus selected, checked for the purpose of payment by one of appellees' employees; or he could have the services of a clerk in making his purchases. Appellant testified that, on the 2d day of May, 1931, he was served by one of appellees' clerks. After making his grocery purchases he stacked them in the rear of appellees' store, under the rules of the store, and left the store and went to Bailey's Grocery Store and there bought the sack of sugar in question. He returned to appellees' store with this sack of sugar and put it on top of the groceries he had selected from appellees' stock. Appellee Bryan Brookshire went back with appellant to check the groceries thus selected by him. Appellant proposed to pay for his groceries and handed Bryan Brookshire the money to cover the amount of his bill. Brookshire then said: "You haven't paid for the sack of sugar." Appellant replied: "I didn't get it here; I got it from Mr. Bailey's from John Varner." Brookshire then walked away and came back in "five or six or seven minutes," and resumed the conversation, saying: "You got that sugar here and you know it; Bailey does not handle that kind of sugar." Appellant then said: "The hell they don't." Brookshire replied: "No." Plaintiff then said: "Come on and I'll prove it to you." And Brookshire replied: "Are you sure of that?" And appellant said: "Let's be going." They then went to Bailey's store and were informed by Mr. Varner that appellant had, in fact, purchased the sugar from him. These facts were testified to by appellant and by certain customers of appellees, who were in the store and heard Bryan Brookshire use the language charged by the petition. To give the attending facts more in detail, we quote as follows from appellant's testimony:

"I talked to Mr. Brookshire that evening. As to how this conversation came up, well— I bought this bill of groceries from him and bought a sack of sugar from Mr. Varner, Mr. John Varner—worked at Mr. Baileys—Dutch Bailey's, next door. And I started in and met Mr. Brookshire and I said I was about ready to ride, and I said, 'Let me pay you my bill;' and I handed him the bill, and he said, 'You haven't paid for the sack of sugar'; and

I said, 'I didn't get it here; I got it from Mr. Bailey's from John Varner'; and I stood around there a few minutes, and directly he came back, in a few minutes—not over five or six or seven—and he says, 'You got that sugar here; they don't handle that kind of sugar down there'; and I says, 'The hell they don't!' and he says, 'No'. I says, 'Come on and I will prove it to you' and he says, 'Are you sure of that?' and I said, 'Let's be going.'"

Appellant alleged that by the use of the defamatory language appellees "undertook to and did charge this plaintiff with the theft of said sugar and being a thief." He further alleged that by the use of the defamatory language appellees imputed to him the crime of theft. There was no allegation that the language charged him with being dishonest or untruthful or with cheating, or imputed to him that character of dishonorable conduct. The petition went no further than to allege the specific language quoted, with the attending facts and circumstances, and that it constituted a charge of theft against appellant or imputed to him the crime of theft. Appellant pleaded general and special damages and prayed for judgment in the sum of $10,000 actual damages. Though he pleaded special damages, he offered no proof whatever raising any issue of special damages.

## Opinion.

Appellant insists that his pleading and evidence raised the issue either that the defamatory language was slanderous per se or that it was slanderous per quod, that is, that the words charged in his petition were actionable in themselves or, if in error in that contention, that they were actionable on his allegations of special damages. We think these contentions are without merit and that the verdict was properly instructed against him. To be slanderous per se, the defamatory words must be reasonably "capable of a defamatory meaning." Hitzfelder v. Koppelmann, 30 Tex. Civ. App. 162, 70 S. W. 353, 354. Because words are susceptible of two meanings, one of which is slanderous per se and the other is not, it does not necessarily follow that they are not actionable per se. Clark v. Bohms (Tex. Civ. App.) 37 S. W. 347. Where the language used is not necessarily defamatory upon its face, but, under the attending facts, is capable of that construction, the rule, as stated by the two cases just cited, is that the issue is for the jury. In Zeliff v. Jennings, 61 Tex. 458, Judge Stayton ruled that words are slanderous per se when they charge an offense which, if proved, would subject the accused person to disgraceful punishment. Appellant tried to bring himself within the rule announced by that case, and cites it to us in support of his proposition that the language used against him by Bryan Brookshire was slanderous per se. Thus he alleged that by the use of the defamatory lan-

guage appellees charged him with being a thief and imputed to him the crime of theft. Though Bryan Brookshire did not, in specific language, say that appellant was a thief, yet, if the words: "You got that sugar here and you know it; because Bailey does not handle that kind of sugar," in their usual and natural significance, clearly and unambiguously charged appellant with the crime of theft, or if, construed in the light of the attending circumstances, they were reasonably capable of that construction, they were actionable per se. Where words have two meanings, they may or may not be actionable per se, according to the sense in which they were understood by those who heard them, which is generally a jury question: the test is what construction would be placed upon the language by the average person or the general public, and not the construction placed upon it by the plaintiff. Express Publishing Co. v. Isensee (Tex. Civ. App.) 286 S. W. 927; Koehler v. Sircovich (Tex. Civ. App.) 269 S. W. 812; Lehmann v. Medack (Tex. Civ. App.) 152 S. W. 438; Clark v. Bohms, supra; Hitzfelder v. Koppelmann, supra; Texas & Southwestern Digest, Libel and Slander, Fenn v. Kroger Grocery & Baking Co. (Mo. Sup.) 209 S. W. 885; Lemaster v. Ellis, 173 Mo. App. 332, 158 S. W. 904; 17 R. C. L. 312. However, after giving most careful consideration to the record, it is our conclusion that the defamatory words, construed in the light of all the attending circumstances, were not subject to the construction of two or more meanings, but were clear and unambiguous. It follows that the court did not err in refusing to submit to the jury the issue of their proper construction. Under the undisputed facts in the record, the proper construction of the defamatory language was a question of law for the court and by giving the instructed verdict the court correctly ruled that the language addressed by Bryan Brookshire to appellant did not charge him with the crime of theft.

Theft is defined by the following articles of the Revised Penal Code, 1925:

"Art. 1410. 'Theft' is the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking."

"Art. 1412. To constitute 'taking' it is not necessary that the property be removed any distance from the place of taking; it is sufficient that it has been in the possession of the thief, though it may not be moved out of the presence of the person deprived of it; nor is it necessary that any definite length of time shall elapse between the taking and the discovery thereof; if but a moment elapse, the offense is complete."

"Art. 1413. The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

The essential elements of these articles of the Penal Code were not invoked by the facts of this case. While asportation is not necessary to complete the crime of theft, yet the property must be in the possession of the thief, at least for the "moment" referred to by article 1412, and his possession must include the other essential elements of articles 1410 and 1413. Thus, there must be a fraudulent "taking" of the property from the owner or some one holding it for him, without his consent, with intent to deprive him of its value and to appropriate it to the use and benefit of the person taking it; to amount to theft, the "taking" must not only be fraudulent, but it must amount to an actual appropriation to his own use and benefit by the person taking it. In this case the attending facts were to the effect, without any dispute in the evidence, that Bryan Brookshire thought the sugar belonged to appellees, and that appellant was trying to appropriate it on the false pretext that he had purchased it from another store. Under these attending facts, even if the sugar had belonged to appellees, it came into appellant's possession by rightful means, for under the rules of the store, he had permission from appellees to take it off their shelves and stack it with his other groceries for the purpose of checking it for payment. So, under any construction of the attending facts, the sugar was lawfully with appellant's other grocery purchases. To constitute the crime of theft, the appropriation must become, for at least a moment, an accomplished fact. Had the sugar belonged to appellees, there was no appropriation. Appellant had tendered his purchases to Bryan Brookshire to be checked. Under the rules of the store, appellees retained control over these groceries until they were checked and paid for. Had the sugar belonged to appellees, under the rules of the store Bryan Brookshire had the right to replace it upon the shelves in the event appellant refused to pay for it. It thus appears that Brookshire thought, and the general public was compelled to give the attending facts the same construction, that he had the right to retain control over the sugar and, in fact, exercised that right and did not permit appellant to have exclusive control and possession, until after the defamatory words had been uttered. Had the sugar belonged to appellees, there was never a moment when it was in the exclusive control of

appellant, nor had he for a moment appropriated it to his own use or benefit. It follows, we think, that neither "possession" nor "appropriation" were involved in the defamatory language. It necessarily follows that the words used, construed in the light of the attending circumstances, did not charge appellant with the crime of theft; they amounted to nothing more than a charge that he was trying to steal the sugar, which is not a crime in this state and, therefore, not actionable. In their construction of defamatory words, the following cases are interestingly in point: York v. Mimms, 179 Ky. 525, 200 S. W. 918; Fenn v. Kroger Grocery Co., supra; Wooten v. Martin, 140 Ky. 781, 131 S. W. 783, Ann. Cas. 1912B, 407, and the many authorities reviewed in that case. In what we have said we are not in conflict with Perry Bros. Variety Stores v. Layton (Tex. Civ. App.) 7 S.W.(2d) 190, 191; Layton v. Hightower (Tex. Com. App.) 12 S.W.(2d) 110; Perry Bros. Variety Stores v. Layton, 119 Tex. 130, 25 S.W.(2d) 310; Id. (Tex. Civ. App.) 32 S. W.(2d) 863; Foley Bros. Dry Goods Co. v. McClain (Tex. Civ. App.) 231 S. W. 459; McDaniel v. King (Tex. Civ. App.) 16 S.W.(2d) 931. In each of these cases the defamatory words, construed in the light of the attending facts, involved every element of the crime of theft, as defined by the Penal Code. Thus, in the Layton Case, Mrs. Layton had been in appellee's store as a customer, and when she returned a few moments later the manager called to her, and with reference to her first visit to the store, asked her "Where are those bloomers you took from the store awhile ago?" thereby charging her with taking the bloomers from his possession, without his consent, with the intent to deprive his principal of their value, and with the intent to appropriate them to her own use and benefit, and with having so appropriated them. Without analyzing the other cases cited by appellant as being contrary to our holding, their facts invoked all the elements of the crime of theft. By his supplemental argument, appellant calls to our attention Dean v. Black & White Stores (Ark.) 55 S.W.(2d) 500. The facts of that case make it absolutely on all fours with the Layton Case.

On the issue of slander per se, appellant was not bound by his innuendo that the defamatory words charged him with being a thief, since these words, in their ordinary meaning, do not sustain that charge, 37 C. J. 26; and we agree with him that this language was reasonably subject to the construction that Bryan Brookshire charged him with cheating or with dishonesty or with lying. Giving the words that construction, appellant invokes the definition of libel, as given by article 5430, R. S. 1925, and on the proposition that this definition "covers both libelous and slanderous cases in Texas," asserts that the charge of cheating or dishonesty or lying was

slanderous per se. Appellant is in error in this construction of the statutory definition of libel. Slander is no part of this definition. There is a distinction in law between slander and libel, thus recognized by 17 R. C. L. 263: "There is a well settled distinction between written or printed and mere oral defamation in respect to its actionable character. Much which if spoken would not be actionable without an averment of extrinsic acts or an allegation and proof of special damages, when written or printed is actionable. Defamatory words when spoken are not ordinarily actionable per se, unless they impute a crime."

■ It is not necessary for us to determine whether or not the words charged in the petition were libelous per se under article 5430, for this is not a case of libel. But, as we understand the authorities, charges of cheating, dishonesty, and lying are not slanderous per se, unless they "impute a crime at common law or under a statute." 36 C. J. 1199; 27 R. C. L. 290. Clearly these charges, that is, "cheating," "dishonesty," and "lying," as deduced from the language in issue, did not impute to appellant either a common law or a statutory crime.

It follows that we must overrule appellant's propositions that the defamatory language was slanderous per se.

■■ We now come to the contention that the language, as charged in the petition, construed in the light of the facts alleged, was actionable on the allegations of special damages, that is, per quod. There are two answers to this contention. Though appellant alleged special damages, his proof wholly failed to raise that issue. But, if he had offered proof of special damages, it could have done nothing more than sustain the theory that the defamatory words charged him with dishonesty, cheating, or lying. He can have no relief on this ground, on his proposition that the language was actionable per quod, because, by his innuendo, he limited the meaning of the words to that of theft. The rule is that "where the communication is not actionable per se and the innuendo is used to impute a defamatory meaning, plaintiff is bound by the construction which he has given to the words in the innuendo." 37 C. J. 26. It follows that the defamatory words were not actionable per quod.

Our original opinion in this case was filed on the 9th of February, 1933. On rehearing, appellant assigns error against one of our fact conclusions which require a much fuller statement of the facts; also, the propositions assigned by the motion for rehearing require a more detailed discussion than was given in the original opinion; also, it was proper that we refer to the decisions with which appellant says we are in conflict. In order to dispose of all the issues in one opinion, we are

548

withdrawing our original opinion and substituting in lieu thereof this opinion on rehearing.

For the reasons stated the judgment of the lower court is in all things affirmed.